**In re ENGINEERING ANIMATION SECURITIES LITIGATION.**

Nos. 4–99–CV–10117, 4–99–CV–10590.

United States District Court,
S.D. Iowa,
Central Division.

May 16, 2001.

ORDER

LONGSTAFF, District Judge.

Before the Court is a joint motion by the parties, based on the stipulation and agreement of settlement, that asks this Court to: certify plaintiffs as a class; approve their settlement agreement as fair, reasonable and adequate; dismiss the lawsuits with prejudice on the merits; and approve plaintiffs' application for attorneys' fees and expenses. The agreement was dated February 1, 2001 and filed on February 5, 2001 with this Court. The Court issued a preliminary order in connection with settlement proceedings on February 7, 2001, and held a hearing on May 4, 2001. The matter is fully submitted.

" 'A class action shall not be dismissed or compromised without the approval of the court ....' " *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620–21, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting FEDERAL RULE OF CIVIL PROCEDURE 23(e)). The

Court in this ruling must now decide whether to grant such approval to the parties in this litigation.

## I. BACKGROUND

These cases involve actions brought by shareholders who purchased the common stock of Engineering Animation, Inc. ("EAI") between February 19, 1998 and April 6, 1999 ("relevant period 1", civil case number 4–99–cv–10117), and/or July 29, 1999 and October 1, 1999 ("relevant period 2", civil case number 4–99–cv–10590).[1] Plaintiffs' complaints allege that defendants issued materially false and misleading press releases and made other statements to artificially inflate the value of EAI's common stock. Plaintiffs allege these statements, along with certain omissions, violated sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, along with Rule 10b–5 promulgated thereunder.

Specifically, one of the things plaintiffs alleged is that EAI's accounting practices associated with the acquisition of two other companies was wrongful and led to an inflated stock price. Plaintiffs state that EAI allowed its financial records to knowingly reflect that it had acquired very large amounts of "in-process research and development" ("IPR & D") when it bought these companies, only to later significantly reduce those amounts. Plaintiffs allege this difference in accounting allowed EAI's stock price to be inflated during relevant period 1, and that individual defendants benefitted from this by selling their own stocks at the artificially inflated price.[2]

This Court issued a ruling on a motion to dismiss this action brought by defendants on March 24, 2000 in case number 4:99–cv–10117, addressing plaintiffs' claims with respect to relevant period 1. The Court granted defendants' motion to dismiss portions of plaintiffs' claims that defendants had violated

---

1. Excluded from the plaintiffs' class are the individual defendants named in these suits and the officers and directors of EAI. Additionally excluded are: the parents, spouses, siblings and children of any excluded person; any entity in which any excluded person has a controlling interest; and the legal representatives, heirs, successors and assigns of any excluded person.

2. During relevant period 1, three of the four individual defendants sold significant portions of their EAI holdings: Matthew Rizai sold 179,227 shares and received over $7.5 million in proceeds; Martin J. Vanderploeg sold a similar number of shares and also received over $7.5 million in proceeds; and Jerome Behar sold shares that resulted in $83,700 in proceeds.

section 10(b), rule 10b–5 and section 20(a) by making certain statements or omissions. However, the Court denied defendants' motion regarding statements and omissions which concerned the aforementioned accounting practices by EAI. Pending before the Court at the time the parties reached the settlement agreement was a motion by defendants to reconsider the ruling on the motion to dismiss.

Also pending before the Court prior to the settlement agreement by the parties was a motion to dismiss in case number 4:99–cv–10590, addressing plaintiffs' claims with respect to relevant period 2. The Court did not rule on this motion.[3]

As previously mentioned, following negotiations, the parties entered into a settlement agreement and filed it with the Court on February 5, 2001. The Court then entered a preliminary order on February 7, 2001. In the preliminary order, the Court: preliminarily certified the class for settlement purposes; designated lead plaintiffs as class representatives;[4] set the time for the fairness hearing; approved the forms of notice and defined procedures for providing notice to class members; set up the timetable for filing proofs of claims and the deadline for the filings;[5] and set the date by which class members had to file for exclusion from the class or object to the settlement.[6]

A. Settlement Amount and Plan of Allocation

The cash settlement amount is $7,500,000 plus interest.[7] The settlement agreement calls for plaintiffs' attorneys to receive an award of one-third of the settlement fund, or $2,500,000. Also deducted out of this fund will be all approved expenses, costs and taxes. Those class members who submit acceptable proofs of claims, also known as authorized claims, will then benefit from the settlement based on the plan of allocation ("the Plan") set up in the settlement agreement.

Each member with an authorized claim will receive a "recognized claim" award based upon variable factors that constitute the Plan. The first variable is whether the member held shares of EAI during relevant periods 1 and/or 2. Second, the amount of the recognized claim will depend upon when the member sold his or her shares. And third, the total number of proofs of claim that are filed will directly affect the amount of recognized claim each member receives.

The Plan states that those members who have recognized claims for relevant period 1 and sold after the close of market trading on April 6, 1999, the date the relevant period ended, are entitled to receive the lesser of two amounts, either: a.) $18.25 per share,[8] or b.) the price they paid for their shares less $21.69.[9] However, if a member sold shares prior to the close of market trading on April 6, 1999, then the recognized claim is discounted by 75%. Those members who held shares for relevant period 2 and sold after the close of market trading on October 1, 1999, are entitled to receive the lesser of two

---

**3.** In addition to the motions pending, the Court was informed at the fairness hearing that there were going to be significant disputes regarding the scope of discovery had the settlement not been reached. Plaintiffs have assured the Court that large amounts of time have been spent on discovery, and the Court finds it reasonable to believe that protracted and complex discovery disputes were looming in these cases prior to summary judgment motions.

**4.** The Court named William L. Wright, David Anderson, Ronald Buch, Richard Dunphy, Vladimar Katz, Gilbert Mueller, and L.D. Eisenhart as class representatives.

**5.** Proofs of claims are due to be filed by June 1, 2001.

**6.** Class members were to file for written objections or for exclusion from the class by April 2, 2001.

**7.** At the hearing, the Court was informed that the settlement fund has been earning interest since January 10, 2001. Lead counsel for plaintiffs indicated that she was uncertain of the rate at which the fund has been earning interest, but indicated the fund was safely invested at a relatively low rate of return.

**8.** $18.25 was the amount EAI's stock price dropped on April 6, 1999.

**9.** $21.69 was the value of a share of EAI at the end of the market's close on April 6, 1999.

amounts, either: a.) $7.06[10] per share, or b.) the price they paid for their shares less $8.75.[11] Again though, if a member sold her shares prior to the close of market trading on the last day of the relevant period, October 1, 1999, then her recognized claim is discounted by 75%.

The amount of each recognized claim is not going to be the full amount formulated by the plan of allocation. The ultimate amount each class member will receive will depend upon the number of proofs of claim that are filed. If all shares of EAI appear as recognized claims, then the settlement agreement anticipates that each member will recover $.47 per share less $.16 per share in attorney's fees, for a total of $.31 per share.

### B. Notice to Class Members

Notice and proof of claim forms were mailed on February 21, 2001 to 1,022 persons who purchased shares of EAI common stock during the relevant periods. *See* Affidavit of Cheryl Washington[12] at ¶ 3 (dated April 27, 2001). On February 28, 2001 a summary notice of this potential settlement was published in the national edition of *The Wall Street Journal. Id.* at ¶ 7. An additional 16,706 envelopes containing notice and proof of claim forms were sent out as of April 27, 2001 due to requests or inquiries over this period of time. *Id.* at ¶ 5. At the hearing, plaintiffs' lead counsel indicated that the "vast majority" of these notices were sent out prior to the April 2 deadline to object or request to be excluded from settlement class membership.

### C. Objections and Requests for Exclusions

Two class members have requested exclusion, and two members have filed written objections to the settlement. Keith Van Hemert, from Pella, Iowa, requested exclusion from the class by letter dated March 19, 2001. Joseph Barbaglia, from Ames, Iowa, requested that he be excluded by letter dated April 2, 2001.[13] Letters of objection were sent by William Enke and Jeanne Mount. Enke expressed his displeasure with the settlement based primarily on the small amount of money he would likely receive and the large amount of loss he suffered as a result of the drop in stock price. Mount expressed her displeasure with the claims process.

At the May 4 fairness hearing, three class member representatives were present: Paul Anderson representing Wall Street Investment Co., Franklin Stewart, and William Johnson. These members were given an opportunity to speak at the hearing. Stewart was the only one who spoke, and his comment did not focus on the settlement.[14]

### D. The Filing of Proofs of Claim

As of May 9, 2001, the Court has been informed by lead defense counsel that approximately 2,750 claim forms have been received by the settlement claims administrator. The deadline for filing claims is June 1, 2001. The Court has also been informed by lead defense counsel that the settlement claims administrator expects to receive 6,000 to 7,000 proof of claim forms from class members by the deadline. The Court has not been made aware of the number of shares encompassed by the 2,750 claim forms that have already been submitted, nor has it been given any prediction concerning how many shares will be accounted for by the final number of recognized claims.

---

10. $7.06 was the amount EAI's stock price dropped on October 1, 1999.

11. $8.75 was the value of a share of EAI at the end of the market's close on October 1, 1999.

12. Cheryl Washington is an employee of Gilardi & Co., LLC, the firm retained to send out notice and handle the proofs of claims submitted by members.

13. Barbaglia stated in his letter, "P.S. I reserve the right to resend [sic] my request for exclusion from the class after I review the outcome of the settlement fairness hearing." The Court assumes

that Mr. Barbaglia meant that he reserved the right to "rescind" his request for exclusion, and the Court recognizes that he has that right until the June 1, 2001 deadline for filing proofs of claim.

14. Mr. Stewart inquired into the status of the individual defendants and whether they were still employed with Unigraphics, the company which now owns EAI. Mr. Stewart was informed that only one individual defendant, Jamie Wade, was still employed with Unigraphics.

## II. CLASS CERTIFICATION

The Supreme Court called for "heightened attention" to the requirements for class certification in *Amchem,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 and *Ortiz v. Fibreboard Corporation,* 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999). *See Petrovic v. Amoco Oil Co.,* 200 F.3d 1140 (8th Cir. 1999). In *Amchem* and *Ortiz,* the parties (or arguably, defendants and plaintiffs' counsel) defined the class and presented the settlement agreement to the court without litigating the matter. The Supreme Court recognized a risk of collusion at the expense of class members, as the district court is cut out of the proceedings when the settlement is filed simultaneously with the class action complaint.

As was the case in *Petrovic,* 200 F.3d at 1146 (detailing how the litigation had been before the district court for more than three years and was approaching a trial date), the Court has been involved in this suit. While the case was not close to trial, the parties had litigated several matters before this Court, were involved in a complex motion to dismiss prior to engaging in settlement, and had significant motions pending before it at the time of settlement. *See also Grove v. Principal Mutual Life Ins.,* 200 F.R.D. 434 (S.D.Iowa 2001) (indicating the importance that the case had been litigated for nearly four years and that the Court had an opportunity to be involved in the litigation prior to determining class certification). However, *Amchem* and *Ortiz* make clear that even in a case such as this, the Court still must inspect the requirements for class certification and make sure they are met.

█ Under Rule 23(a), the prerequisites to a class action are: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." FEDERAL RULE OF CIVIL PROCEDURE 23(a). Additionally, the common questions of law or fact must "predominate over any questions affecting only individual members" and a class action is to be found "superior to other available methods for a fair and efficient adjudication of the controversy" before it can be certified. FEDERAL RULE OF CIVIL PROCEDURE 23(b)(3). *See generally Amchem* 521 U.S. at 619–628, 117 S.Ct. 2231 (deciding the role settlement may play in determining the propriety of class certification, and finding that whether a settlement is fair is relevant to a class certification but that the other prerequisites must also be met).

Rule 23(a)(1)'s requirement, "numerosity," is met in this case. Over 17,000 notices have been sent out. The class is comprised of persons who held shares of a public company over different periods of time, and not just a few owners of a private company. Rule 23(a)(2)'s requirement, "commonality," is also met. Examples of commonality are that all plaintiffs in this case would have to show EAI's scienter to maintain their cause of action, and demonstrate damages based on EAI's wrongful conduct in violation of federal securities laws during the relevant periods. *See, e.g., In re Ikon Office Solutions, Inc., Securities Litigation,* 194 F.R.D. 166, 175 (E.D.Pa.2000) (finding numerosity and commonality easily met in the context of a settlement of a securities fraud class action suit).

"Typicality," the requirement under Rule 23(a)(3), is met as the record reflects that the named plaintiff's individual circumstances or legal theories are no different from the claims of other class members. The representatives and all members purchased shares of EAI common stock during the relevant periods, and their claims are all the same in that they allege the prices were wrongly inflated due to the statements, omissions, and/or actions of EAI and the individual defendants. "Adequacy," the requirement under Rule 23(a)(4), is met. There is nothing in the record to indicate a conflict of interest between a named party and the class they represent. Further, plaintiffs' counsel is qualified. *See* Compendium of Affidavits in Support of Final Approval of Settlement, Filed April 27, 2001.

Finally, addressing the requirements set by Rule 23(b)(3) for certification, the Court finds "predominance" and "superiority" are met. "The predominance test is 'readily met'

in many securities fraud actions ...." *In re Ikon,* 194 F.R.D. at 177 (quoting *Amchem,* 521 U.S. at 625, 117 S.Ct. 2231). In this case, any plaintiff bringing an individual action would argue EAI is liable for securities fraud based on the exact same statements, omissions and actions that every other plaintiff would argue. When a class has alleged similar misrepresentations, courts have held that the class has a " 'common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions and, and that the issue may profitably be tried in one suit.' " *In re Ikon,* 194 F.R.D. at 178 (quoting *Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir. 1975)). Differences between class members—based on when they bought EAI stock, how much they bought, and when they sold it—"cast no doubt on the finding of predominance." *Id.* Additionally, superiority is met in this case as the class action is the most realistic alternative for individual shareholders to bring their claims against EAI. In a securities fraud case such as this, the only other "[r]ealistic alternative[ ] to a class action are many scattered suits with possibly contradictory results for some plaintiffs, and, for many more, abandonment of claim." *In re Ikon,* 194 F.R.D. at 178. This is not a desirable route. Plaintiffs' counsel has borne risk by filing the suit on behalf of the class, conducting discovery and incurring all the expenses to date. It is highly unlikely that many, if any, members of the class would be willing to do the same simply to recover their own individual losses. The class action form is a superior method in this suit against EAI and the individual defendants.

## III. FAIRNESS OF THE SETTLEMENT

 "The criteria for determining whether the settlement is fair, reasonable, and adequate are: (1) the possible rewards of continued litigation weighed against the benefits of settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *Grove,* 200 F.R.D. at 445 (citing *Petrovic,* 200 F.3d 1140 (other citations omitted)). "The most important consideration in this context is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.' " *Petrovic,* 200 F.3d at 1150 (citations omitted). The Court is not allowed to substitute its own judgment for that of the parties, and the Court cannot force the parties to alter the terms to which they have agreed. The Court's options are to accept the proposed settlement or reject the settlement. That decision must be based on the aforementioned considerations. *See Grove,* 200 F.R.D. at 445 (citing *Evans v. Jeff D.,* 475 U.S. 717, 726–26, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986)).

 The Court finds that the settlement is fair, reasonable and adequate. The rewards of continued litigation for the plaintiffs *could* be greater than the amount each class member will receive as a result of this settlement; however, the class members' reward would most certainly be delayed for a long time and quite possibly the members could receive nothing if this settlement is rejected. Plaintiffs do not have a strong case. This Court granted defendants' motion to dismiss in part, and a significant portion of plaintiffs' relevant period 1 claims were dismissed. Further, there is a significant dispute on the law which should govern the scienter element that plaintiffs would have to prove if their remaining claims went forward, and the Eighth Circuit has yet to decide the governing standard. This Court sided with a more lenient standard urged by plaintiffs in its ruling on the motion to dismiss, but this has not been adopted in the Eighth Circuit. While this Court clearly found the accounting alterations by defendants could be found fraudulent, the Court noted that EAI's accounting method with respect to IPR & D was not a well-settled area in which it could clearly be stated that EAI had definitely engaged in a fraudulent practice. Continued litigation presents significant risks for plaintiffs.

In addressing the remaining factors, the Court notes there was minimal opposition to this settlement. This weighs in favor of finding it fair. Further litigation would be expensive for all parties involved; and while EAI is now owned by another company (Unigraphics) and appears able to pay a judg-

ment if plaintiffs proved securities fraud and won a large judgment, EAI also is now clearly able to engage in extensive litigation because of its new ownership. These factors, too, ultimately weigh in favor of finding the settlement fair.

The Court is not enthusiastic in approving a settlement where the class members could potentially receive as little as $.31 per share of stock owned as many members incurred significant losses as a result of the EAI stock price plunge. However, in light of the reasonable possibility that plaintiffs would be unable to prove EAI committed securities fraud and would fail to recover on their claims, the Court finds the parties' settlement agreement is fair.[15]

## IV. ATTORNEYS' FEES AND EXPENSES

■ Plaintiffs' attorneys have requested they receive fees in the amount of one-third of the settlement fund, or $2,500,000, based on a contingency fee arrangement.[16] Plaintiffs have also requested reimbursement for expenses incurred in the prosecution of the claims in the amount of $75,699.12. Additionally, plaintiffs have indicated that it will seek reimbursement at the end of the claims process for the claims settlement administrator's costs and that this will be between approximately $235,000 and $275,000.

The Court now grants the attorney fee and expenses requests that are currently submitted. *See Petrovic,* 200 F.3d at 1157 (noting that percentage of fund method is appropriate in a common-fund settlement case). The Court notes that the notice that class members received fully alerted them to the amount of attorneys fees that were a part of the settlement, and also indicated that approximately $100,000 of expenses would also be deducted from the settlement fund.

However, the Court notes its displeasure with the amount of estimated expense associated with the claims settlement administrator's services that have just been brought to its attention *after* the fairness hearing. The notices that were sent to class members estimated expenses at $100,000. At the fairness hearing, lead counsel for plaintiff indicated that there "could be" some "small expenses" that plaintiffs' counsel would apply for later in addition to the $75,699.12, and provided assurance to the Court that she did not expect this request to be a particularly large amount of money. Only after the hearing did the Court learn the amount of claims settlement expenses will be somewhere between $235,000 and $275,000. If such an amount is deducted from the remaining settlement fund that will be distributed directly to class members, it will constitute approximately 5% to 6% of the total fund remaining to class members. While this issue is not properly before it at this time, the Court now notes that it will be *very* hesitant to assess this charge to the class members.[17] The notice class members received failed to indicate the cost of the claims administration process would be this expensive.

## V. CONCLUSION

Based on the foregoing, the Court finds:

1. The case is properly certified as a class action under Rule 23;

2. The settlement agreement is fair, reasonable and adequate;

3. The lawsuits are dismissed with prejudice and on the merits;

4. The application for plaintiffs' attorneys fees in the amount of $2,500,000 is granted, to be deducted from the $7,500,000 settlement fund;[18]

---

**15.** The Court separately recognizes that the plan of allocation, the Plan, is a fair and reasonable manner of reimbursing class members for their loss.

**16.** Plaintiffs have submitted affidavits indicating 2954.30 attorney work hours have been expended for a total Lodestar amount of $868,808.25, based on varying rates charged by the attorneys involved.

**17.** The Court is likely to decide that this is a cost that the attorneys should bear out of the $2,500,000 award they are receiving in connection with this settlement.

**18.** The Court notes that the attorney fee award is subject to a potential reduction based on any future claim for claims administration expenses.

5. The application for $75,699.12 in expenses is granted, to be deducted from the settlement fund;

6. The individuals who requested exclusion, Van Hemert and Barbaglia, are granted such exclusion for class membership as a matter of right. The Court notes, though, that Barbaglia properly reserved a right to file a proof of claim up until the deadline of June 1, 2001;

7. Further, the Court adopts the following findings from the proposed Order and Final Judgment submitted by the parties, exhibit B, appended to the Stipulation and Agreement of Settlement:

a.) Notice of the pendency of these actions as a class action and of the proposed settlement was given to all class members who could be identified with reasonable effort. The form and method of notifying the class of the pendency of the action as a class action and of the terms and conditions of the proposed settlement met the requirements of applicable law, including due process, and was the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

b.) The complaints, which the Court finds were filed on a good faith basis in accordance with the Private Securities Litigation Reform Act and Rule 11 of the Federal Rules of Civil Procedure based on all reasonably available public information, are hereby dismissed with prejudice. Those complaints are:

| | |
|---|---|
| -Schreiber v. Rizai, | 4–99–cv–10117 |
| -Sepe v. Rizai, | 4–99–cv–10128 |
| -Spaccio v. Rizai, | 4–99–cv–10177 |
| -Tyler v. Rizai, | 4–99–cv–10201 |
| -Black v. Rizai, | 4–99–cv–10214 |
| -Volk v. Engineering Animation, | 4–99–cv–10614 |
| -Hershkowitz v. Rizai, | 4–99–cv–10172 |
| -Wright v. Rizai, | 4–99–cv–10590 |

c.) Members of the class and the successors and assigns of any of them, are hereby permanently barred and enjoined from instituting, commencing or prosecuting, either directly or in any other capacity, all claims arising out of purchases of EAI common stock during the relevant periods which could have been asserted by any members of the class against defendants and their current and former directors, officers, employees, attorneys, accountants, insurers, co-insurers, and reinsurers ("released parties"). The settled claims are hereby compromised, settled, released, discharged and dismissed as against the aforementioned released parties on the merits and with prejudice.

d.) Defendants and the successors and assigns of any of them, are hereby permanently barred and enjoined from instituting, commencing or prosecuting, either directly or in any other capacity, any and all claims, rights or causes of action or liabilities whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including both known claims and unknown claims, that have been or could have been asserted in the actions or in any forum by defendants or their successors and assigns against any of the class members or their attorneys, which arise out of or relate in any way to the institution, prosecution or settlement of the actions.

e.) Neither this Order, nor the stipulation of settlement, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein shall be:

-offered or received against the defendants or against the plaintiffs or the class as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any of the defendants or by any of the plaintiffs or the class with respect to the truth of any fact alleged by plaintiffs or the validity of any claim that had been or could

have been asserted in the actions or in any litigation, or the deficiency of any defense that has been or could have been asserted in the actions or in any litigation, or of any liability, negligence, fault, or wrongdoing of the defendants;

-offered or received against the defendants as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any defendant, or against the plaintiffs and the class as evidence of any infirmity in the claims of plaintiffs and the class;

-offered or received against the defendants or against the plaintiffs or the class as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the parties to the stipulation, other than such proceedings as may be necessary to effectuate the provisions of the stipulation; however, defendants may refer to the stipulation to effectuate the liability protection granted them thereunder;

-construed against the defendants or the plaintiffs and the class as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; or

-construed as or received in evidence as an admission, concession or presumption against plaintiffs or the class that any of their claims recoverable under the complaints are without merit or that damages recoverable under the complaints would not have exceeded the settlement fund.

f.) The Plan of Allocation is approved as fair and reasonable, and plaintiffs' counsel and the claims administrator are directed to administer the stipulation in accordance with its terms and provisions.

g.) The award of attorneys' fees shall be allocated among plaintiffs' counsel in a fashion which fairly compensates plaintiffs' counsel for their respective contributions in the prosecution of the actions.

h.) Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the stipulation.

8. The Clerk of Court is directed to enter final judgment on this matter pursuant to Federal Rule of Civil Procedure 54(b).

IT IS SO ORDERED.