Lane McNAMARA, et al., Plaintiffs,

v.

**BRE–X MINERALS LTD.,
et al., Defendants.**

No. 5:97–CV–159.

United States District Court,
E.D. Texas,
Texarkana Division.

July 3, 2002.

H Lee Godfrey, Susman, Godfrey LLP, Houston, TX, Damon Young, Young, Pickett & Lee, Texarkana, TX, A Paul Miller, Miller, James, Miller & Hornsby, Texarkana, TX, R. Paul Yetter, Yetter & Warden, James T Southwick, Susman, Godfrey, LLP, Houston, TX, Steven J Toll, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Michael C Spencer, Hynes & Lerach LLP, New York City, Thomas Robert Ajamie, Schirrmeister Ajamie, Houston, TX, U. Seth Ottensoser, Milberg, Weiss, Bershad, Hynes & Lerach LLP, Adam R. Gonnelli, Jeffrey G. Smith, Peter W. Smith, Wolfe, Haldenstein, Adler, Freeman & Herz LLP, New York City, Robert C. Schubert, Schubert & Reed LLP, San Francisco, CA, Murray Lewis, Matthew J Ide, Cohen, Milstein, Hausfeld & Toll, Seattle, WA, Curt P. Beck, James S. Notis, Abbey, Gardy LLP, New York City, Guy A. Wilson, Worthington & Worthington, Santa Rosa, CA, Charles Robert Eskridge, III, Susman, Godfrey LLP, Houston, TX, Edward Miller, Keeney, Anderson, Miller, James & Miller, Texarkana, TX, for plaintiffs.

John Anderson Gilliam, T. Richard Handler, Hawkins, Parnell & Thackston, Dallas, TX, Andrius R. Kontrimas, Jenkens & Gilchrist, Houston, TX, John Robert Mercy, Mercy, Carter, Tidwell & Elliott, Texarkana, TX, Karen Patton Seymour, Tiffany M. Erwin, D. Stuart Meiklejohn, Sharon Nelles, Sullivan & Cromwell, New York City, Preston Worley McGee, Flowers, Davis LLP, Tyler, TX, Gary D. Grimes, Grimes & Craytor, Johnny Paul Arnold, Attorney at Law, Texarkana, TX, David E McCraw, Clifford, Chance, Rogers & Wells, Andrew T Solomon, Sullivan & Worcester, New York City, Winford L. Dunn, Jr., Dunn, Nutter & Morgan, Texarkana, AR, L. Nicole Batey, Eric J. R. Nichols, Beck, Redden & Secrest LLP, Houston, TX, John Hess McElhaney, Locke, Liddell & Sapp, Dallas, TX, John David Crisp, Crisp, Boyd, Poff, Texarkana, TX, Mark Douglas Wegener, Martin Cunniff, Howrey, Simon, Arnold & White LLP, Washington, DC, William S. Hommel, Jr., Hommell & Starr, Tyler, TX, Zack A. Clement, Linda L. Addison, William J. Boyce, Fulbright & Jaworski, Houston, TX, Nicholas H. Patton, Patton & Tidwell, Texarkana, TX, Robert M. Buschmann, Gerald D. Silver, Winston & Strawn, New York City, Daniel R. Murdock, Winston & Strawn, New York City, Philip Smith, New York City, James N. Haltom, Patton, Haltom, Roberts, McWilliams & Greer LLP, Texarkana, TX, Eric F. Grossman, Lewis B. Kaden, Lawrence J. Portnoy, Abraham Gesser, Daniel E. Wenner, Helen Harris, Davis, Polk & Wardwell, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

FOLSOM, District Judge.

Before the Court is Plaintiffs' and Defendant Bresea Resources's (Bresea) Revised Joint Motion for Preliminary Approval of Proposed Settlement Between Plaintiffs and Bresea (Doc. No. 787). The motion requests that the Court issue an order (1) granting preliminary approval of the settlement, (2) conditionally certifying a plaintiff class for purposes of settlement only, (3) approving forms of notice to class members, and (4) setting terms and schedule for the settlement approval process. Having considered the arguments and briefs, the Court finds that the motion is well taken and should be **GRANTED**.

### I. BACKGROUND

For purposes of this Order, the Court will not recite the complete factual background of the case but will instead only detail the relevant points. For a complete description of the factual nature of this case, see this Court's opinion reported as *Lane McNamara v. Bre–X Minerals Ltd., et. al.,* 57 F.Supp.2d 396 (E.D.Tex.1999).

On November 2, 2001, Plaintiffs and Bresea filed a motion seeking approval of a proposed settlement. This Court received

extensive briefing on the subject and held a hearing on the matter on November 20, 2002. On January 15, 2002, the Court issued a ruling (the January 2002 order) denying the initial motion for approval of settlement. The original settlement sought to include in the class, "all persons who purchased or otherwise acquired Bre–X Minerals Ltd. common shares and/or Bresea Resources Ltd. common shares between May 6, 1993 and May 2, 1997 and who suffered a loss as a consequence of dealing in shares of Bre–X and/or Bresea." As grounds for denial of this motion, the Court held that the proposed class did not meet the predominance requirement of Rule 23 as it included plaintiffs who were not covered in the complaint and because it included plaintiffs whose claims arose after Freeport MacMoran announced that there were insignificant amounts of gold at Busang and who would therefore be required to prove individual reliance.

Plaintiffs and Bresea have reached a new settlement (the 2002 Settlement) which excludes those plaintiffs. Additionally, Plaintiffs claim that the 2002 Settlement is materially different from the original settlement in the following ways:

$4.48 million (minus attorney fees and "certain other deductions") of the $5.76 million payment by Bresea will be distributed to the eligible class members and will not be distributed to the Bre–X Trustee (the remaining $1.28 will be given to the Bre–X Trustee.)

Attorneys' Fees have been reduced by over $100,000.

The Bre–X trustee has agreed to seek a declaration that injured Bre–X purchasers are creditors of Bre–X, but this is not a condition precedent to the rights and obligations of the parties under the settlement.

Recoveries from Bre–X/Bresea insiders Francisco, Lyons, Thorpe, Coates, and Kavanagh will no longer be pooled among this action, the Ontario action, and the Bre–X trustee.

Recoveries from Felderhof, the Walshes, and McAnulty will be pooled among this action, the Ontario action, and the Bre–X trustee only if Bre–X Trustee obtains and order declaring Bre–X share purchasers to be creditors of Bre–X.[1]

The 2002 Settlement Agreement has been approved by Lead Plaintiffs and the Proposed Class Representatives from this action. The 2002 Settlement's completion is conditional on the approval of the Settlement Agreement by the three Courts with jurisdiction over the claims of Bre–X and Bresea share purchasers: this Court, the Alberta Court, and the Ontario Court. The Alberta Court approved the 2002 Settlement on June 25, 2002, and the Ontario Court approved the settlement on June 20, 2002.

## II. STANDARD FOR REVIEWING A PROPOSED SETTLEMENT

■ Federal Rule of Civil Procedure 23(e) provides that, "A class action shall not be dismissed or compromised without the approval of the court, and notice shall be given to all members of the class in such a manner as the court directs." Approval of a class action settlement involves a two-step process. First, the Court makes a preliminary fairness evaluation of the proposed terms of settlement submitted by counsel. Second, if the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

### A. Settlement Class

Approval of a settlement in a class action necessarily requires the Court to determine

---

1. Terms of the **ORIGINAL SETTLEMENT AGREEMENT** were as follows:

    1. Bresea agreed to pay $9 Million CDN to Deloitte, in its capacity as Trustee of the Estate of Bre–X Minerals, Ltd., that after the payment of certain expenses, including attorneys' fees, would be available for distribution to Bre–X shareholders in the U.S. and Canada.

2. Bresea would create a pool consisting of shares equal to ten percent of the common equity of reorganized Bresea for the benefit of Bresea shareholders in the U.S. and Canada.

3. Bresea would pool any recoveries obtained from certain insider defendants in this action, the Ontario Class Actions, and the Trustee's Actions, and Deloitte would distribute those recoveries to Bre–X shareholders.

if the proposed class is a proper class for settlement purposes. The law regarding approval of a settlement in a class action where the class has not yet been certified has undergone significant examination in the past five years. In 1997, the United States Supreme Court clearly held that with the exception of the manageability requirement, a settlement class must meet the requirements of Federal Rule of Civil Procedure 23 just as if the case were to be litigated. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial. But other specifications of the Rule—those designed to protect absentees by blocking unwarranted or over broad class definitions—demand undiluted, even heightened, attention in the settlement context." *Amchem v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). What was not articulated by the *Amchem* Court was at what point in the approval process courts are required to make an in depth analysis of the Rule 23 requirements.

In 1999, the Supreme Court once again addressed the Rule 23 requirements in a settlement class, this time in the context of a mandatory class. The Court held that the moment of certification required heightened attention because certification of a settlement class, "however provisional technically, effectively concludes the proceedings save for the final fairness hearing. And ... a fairness hearing under Rule 23(e) is no substitute for rigorous adherence to those provisions of the Rule 'designed to protect absentees' " *Ortiz v. Fibreboard Corporation*, 527 U.S. 815, 849, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) quoting *Amchem*, 521 U.S. at 620, 117 S.Ct. 2231. The language of *Ortiz* suggests that a court must make a detailed Rule 23 analysis and a final certification decision before the fairness hearing; however, *Ortiz* is distinguishable from the case at bar because in *Ortiz*, the court was considering certification of a man-

datory class, and the court's only opportunity to address the propriety of the class was at the preliminary approval stage.

The present case, however, contains significant differences which make in-depth consideration of settlement class certification at the preliminary approval stage burdensome and unworkable. This is a complex securities litigation case that has been pending before this Court for over five years and consists of over eight-hundred docket entries. Plaintiffs have sought certification of several non-settling classes, and two of those classes taken together form the proposed settlement class. First, Plaintiffs seek certification of a "NASDAQ Class" that would include, "all persons who purchased or otherwise acquired shares of the common stock of Bre–X Minerals Ltd. on the NASDAQ exchange from August 19, 1996 up to March 26, 1997." The Court has received extensive briefing on and has conducted an evidentiary hearing regarding certification of the NASDAQ class. The Court has taken the issue under advisement, and the Court will issue an order regarding the propriety of certifying a NASDAQ Class before the Court makes a final determination of the settlement class following the fairness hearing.

Second, Plaintiffs have requested that the Court certify a class of U.S. citizens who purchased Bre–X and Bresea stock on Canadian exchanges from January 17, 1994 until March 26, 1997 (the Canadian Exchange Class). The Court intends to schedule a hearing on the Canadian Exchange Class for the same day it schedules a fairness hearing on the settlement class. The complex nature of the settlement class and the numerous issues raised by the briefing on the Canadian Class lead the Court to believe that a more accurate examination of the settlement class can be made after benefit of full-briefing and a hearing of the issues relevant to the Canadian Exchange Class. After benefit of that hearing, after consideration of the NASDAQ class, and after the fairness hearing, the Court will be in a better position to make a final determination on settlement-class certification.[2]

---

**2.** Though not specifically deciding the point at which the certification determination is made, it is clear that other courts have taken a similar approach to certification. See *Shaw v. Toshiba*

*America Information Sys.*, 91 F.Supp.2d 942 (E.D.Tex.2000) (court engaged in extensive Rule 23 analysis *after* preliminary certification and fairness hearing.) See also *In re Engineering*

Noting that the Court will have ample opportunity to examine in detail the qualifications of the potential class in its examination of the NASDAQ class materials and the Canadian Exchange class materials, and further noting that the Court will take under consideration all objections to the settlement class certification at the fairness hearing, the Court will proceed to make a preliminary, conditional examination of the proposed settlement class's certification capability. Plaintiffs and Bresea request preliminary, conditional class certification for the limited purpose of settlement, and the Court will review the class qualifications with the caveat that detailed orders on certification of the NASDAQ Class and the Canadian Exchange Class will follow this ruling and may impact the validity of the settlement class. As previously stated, because the Court must necessarily conduct a hearing on the Canadian Exchange Class certification issue, final approval or disapproval of the 2002 Settlement will be delayed. The following review serves to demonstrate to the Court that no glaring deficiencies exist that would make final certification untenable.[3]

### 1. Standard

A district court may certify a class only if the plaintiff meets his burden to show that proposed class and the proposed class representatives meet the four prerequisites in Rule 23(a) and one of three additional requirements in Rule 23(b). *See* FED. R. CIV. P. 23; *see also Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 623 (5th Cir. 1999); *Castano v. American Tobacco Co.,* 84 F.3d 734, 740 (5th Cir.1996). A district court has "great discretion" in determining whether to certify a class, but the district court must make a reasoned and thorough analysis under Rule 23. *Mullen,* 186 F.3d at 624.

The four Rule 23(a) prerequisites include: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). All four must be satisfied in order for the Court to certify the class. Once the plaintiff satisfies these prerequisites, he must then satisfy the requirements of one of the three subdivisions of Rule 23(b). *See Amchem,* 521 U.S. at 614, 117 S.Ct. 2231. The requirements of these subdivisions include: (1) inconsistent adjudications would result in incompatible standards of conduct or any adjudication would bear heavily on the interests of non-parties; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; and (3) issues of law and fact predominate issues unique to individual class members, and maintaining the class action is the superior procedural vehicle. FED. R. CIV. P. 23(b)(1)-(3).

### 2. Analysis

### Rule 23(a)

Plaintiffs and Bresea state that there is no issue of *numerosity,* that *common questions of law and fact predominate* because all plaintiffs allege that they purchased Bresea and Bre–X shares at artificially inflated prices, that there is *typicality* because all plaintiffs stand in the same position as other class members with respect to Bresea because they all purchased inflated stock caused by the Bre–X fraud, and that there is *adequacy of representation* because there is no conflict between named plaintiffs and the class members—they all seek maximum recovery—and because counsel is skilled and experienced. As a preliminary matter, the

---

*Animation Securities Litigation,* 203 F.R.D. 417 (S.D.Iowa, 2001) (court in shareholder class action addressed in detail the requirements of Rule 23 in an order issued *after* the fairness hearing was held.) Additionally, the purpose of the preliminary approval is to detect any *obvious* defects that will preclude final approval of the settlement, and the purpose of initial certification is so that *notice* may be sent to the proposed class. See *Manual for Complex Litigation, Third,* pg. 236–237.

**3.** The Court undertook a similar analysis in its January 2002 order as the Court determined that the over-broad nature of the proposed settlement class was fatal to any possibility that a settlement class could be finally approved. The Court was required to consider the appropriateness of the pre-complaint class members and the post-Freeport MacMoran announcement members at the preliminary approval stage because, as was the case in *Ortiz,* the Court had no other opportunity to address those specific issues.

Court agrees that the requirements of Rule 23(a) are met.

### Rule 23(b)(3)

Plaintiffs and Bresea seek to certify the class as a 23(b)(3) class where common questions predominate over individual questions and a class action is superior to individual adjudication of claims. The *predominance* requirement, "is readily met in certain cases alleging consumer or securities fraud or violations of antitrust law." *Amchem*, 521 U.S. at 625, 117 S.Ct. 2231. The Court denied the earlier motion for settlement certification because common questions of law and fact did not predominate among the proposed class members. Plaintiffs and Bresea contend that concerns raised by the Court in that denial have been corrected by narrowing the settlement-class definition in accordance with the Court's order. The Court finds in its preliminary examination of the settlement class that Plaintiffs and Bresea have corrected the over-broad nature of the first settlement class. Next, Plaintiffs argue that the class is a *superior* method for resolving claims because the alternative is thousands of virtually identical individual claims. The Court finds that a class action is the superior method for resolving the dispute at issue because joinder of individual parties would be impossible. Finally, the court need not consider manageability of the class since the proposed class is a limited purpose, settlement only class. *See Amchem*, 521 U.S. at 620, 117 S.Ct. 2231.

Federal Rule of Civil Procedure 23(c)(2) provides that in a "class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances.... The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date ..." This request for exclusion is popularly known as "opting out" of the class.

Defendants argue that the "opt-out" provided for in the settlement notice is really no "opt-out" at all but is simply a way of redirecting those plaintiffs who do not wish to take part in the settlement before this Court to another remedy that does not include litigation, thus creating a class where opt-out is not a real choice. Defendants argue that this effectively creates a mandatory class, and mandatory classes are disfavored for settlement classes. While still recognizing that non-settling defendants have no standing to oppose the settlement, the Court will address the opt-out concerns raised by Defendants as those concerns might suggest a legitimate problem with the settlement class.

■ Defendants contend that the Settlement allows no opt-out because in the Plaintiffs' and Bresea's motion to approve settlement the parties state, "[a] true 'opt-out' by a Bresea settlement class member would be futile since there is no alternative basis for that class member to assert a claim against Bresea, due to the fact that all claims will be settled by the Arrangement upon its becoming effective." (Mot. at 15). Plaintiffs and Bresea go on to state that the Arrangement's becoming effective is conditioned on this Court's approval of the 2002 Settlement. Apparently, the Arrangement's enactment is, at least in part, conditioned on this Court's approval of the settlement agreement. The fact that the Arrangement may be in force in the future, or the fact that another court may consider this Court's approval of the 2002 settlement in deciding to enact or honor the Arrangement does not require this Court to view the settlement as one that does not allow class members to opt out. So long as the settlement agreement itself does not limit or expand the rights of parties who choose to opt out of the class, the right to opt out is not threatened. Although remaining in the settlement class may be a more desirable option, that is not a question for this Court to explore, and it is not for this Court to decide the wisdom of opting out. "If certain plaintiffs wish to opt-out and take their chances at suing a foreign corporation, due process would seem to require that they be allowed to do so absent strong considerations to the contrary not present here." *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 897 (7th Cir.1999). The decision to opt-out is left to the individual with a possible claim against Bresea.

As far as the precise, binding language of the settlement agreement itself, Paragraph six of the 2002 Settlement states that, "a pool consisting of shares equal to ten percent of

the common equity of Bresea (the 'Pool') will be established for the benefit of members of the U.S. Class who purchased Bresea common stock and suffered a loss ... and also for ... any person who opts out of this Action." At the hearing on the settlement class, Plaintiffs' counsel explained that this pool is a part of the Arrangement that will be used to compensate persons not covered by the class settlement. The implication of the language of the settlement agreement is that Bresea is setting aside a pool of ten percent of its common equity that may be used to compensate individuals who opt out of the settlement class. The settlement agreement in no way guarantees those who opt out a portion of the pool, and the settlement agreement in no way attempts to limit those who choose to opt out to recovering only the stock in the pool. Any windfall given to or limitation placed on those who opt out is the result of the Arrangement, *not the settlement agreement.* Basically, the information regarding the pool is articulated in the settlement agreement in order to inform those who remain in the class of the contingent nature of one aspect of the settlement. In accordance with the settlement agreement, settlement class members, in addition to the other concrete benefits of the settlement agreement, are entitled to recover portions of the pool not consumed by litigation with those who have opted out. The Court finds that this portion of the settlement agreement does not hinder the opt-out requirement of the Rule 23(b)(3) class as it does not enhance or restrict the rights of those who wish to opt-out of the settlement class.

Having reached the above conclusions, the Court finds that as a threshold matter, the proposed settlement class preliminarily meets the requirements of Rule 23. The Court will address in detail the propriety of settlement class certification after it issues orders on the NASDAQ Class and the Canadian Class and has a final opportunity to review the Rule 23 qualifications of the proposed settlement class after the fairness hearing. At the present time, in order to move this case along and in order to allow the parties to more fully inform the Court on the issues regarding the Canadian Class, the Court finds as a threshold matter that the proposed settlement class is sufficiently adequate under Rule 23 so that preliminary approval may be granted and the proposed class may be sent notice of the fairness hearing. As stated before, the Court reserves the right to deny certification after it has more fully examined the complex and novel issues in this case.

**B. Fairness Determination—Preliminary Approval of the Settlement**

**1. Rule**

Having determined that for purposes of issuance of notice the settlement class is preliminarily certifiable, the Court next determines whether the settlement meets preliminary fairness requirements.

If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of a class representative or of segments of the class, or of excessive compensation for attorneys, and appears to fall within the rage of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation, Third,* at 237.

**2. Analysis**

■ Plaintiffs Bresea assert that the 2002 Settlement is the result of arm's length negotiations between plaintiffs' co-lead counsel, counsel for Bresea, and the Bre–X Trustee. As support for this assertion, Plaintiffs and Bresea submitted the Second Affidavit of Autry R. Ross, co-lead counsel for Plaintiffs. Additionally Plaintiffs and Bresea assert that counsel for all sides are experienced and familiar with the factual and legal issues presented by the litigations and the settlement. The Court is in agreement that the settlement reached was one resulting from strenuous long-term negotiations between Plaintiffs and Bresea. As is articulated above, this case has been on file for over five years, and each party has pursued its case with vigor and determination. Counsel on all sides have proved to the Court their knowl-

edge of the facts and law relevant to this case. Settlement was reached by knowledgeable counsel, and it was arrived at after much negotiation as is evidenced by the time it took the parties to reach an agreement.

Plaintiffs contend that the economic terms of the settlement are fair because the settlement brings Plaintiffs value from a source (Bresea) that has limited ability to pay anything at all. Plaintiffs cite the differences between the original settlement and the 2002 Settlement in support of their fairness claims. The $4.48 million of actual settlement dollars will be distributed directly to shareholders, unlike in the original settlement where the settlement money would have been distributed to the Bre–X trustee who could have used that money at his discretion before any money went to the class member. Plaintiffs estimate that class members will receive approximately 4 cents per share. Considering Bresea's strained financial conditions, the Court finds that this settlement amount is fair and that although it is possible that a larger verdict might be awarded at trial, Plaintiffs run a substantial risk of being unable to collect a verdict.

Additionally, Plaintiffs' attorneys have reduced fees and expenses from $480,000 in the original proposed settlement to ·$373,333 in the 2002 settlement. Class counsel in the Ontario Class Action will receive $746,666 under the 2002 settlement (down from $960,00 in the original settlement), and Ontario Bresea action attorneys will receive $128,000. The PSLRA expressly provides that the, "total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u–4(a)(6). Courts assess the reasonableness of attorneys' fees to protect class members from unfair settlements, to minimize conflicts of interest between class members and their representatives, and to prevent perpetuating a public perception that attorneys exploit class members for hefty fees. *See Strong v. BellSouth Telecomm. Inc.*, 137 F.3d 844, 849–50 (5th Cir.1998). The Court must make an independent review of the reasonableness of fees sought in a class settlement. *Id.* The Court finds that the attorneys' fees assessed in the current settlement (totaling roughly 25% of the settlement amount) do not exceed a reasonable proportion of the total settlement.

Next, Defendants attempt to establish several conflicts of interest and first take issue with the fact that one Plaintiffs' attorney was appointed as a trustee of Bre–X. Defendants claim that this trustee position created a conflict of interest for Plaintiffs' attorney; however, the attorney's appointment as a trustee was in the capacity of representative of U.S. share purchaser claimants. Such an appointment is for the benefit of potential claim holders, not for the betterment of Bre–X. Furthermore, the trustee "never consulted with the inspectors" regarding settlement. (Robinson Aff. at ¶3). Second, Defendants allege that different recovery for Bre–X and Bresea stockholders creates conflict; however, the Court finds no harm in allowing different recovery for persons who held different stock so long as the settlement is fair. At the formal fairness hearing, any class member who desires may object to the settlement. Third, Defendants claim that because the class representatives for settlement purposes are the same as the proposed NASDAQ class representatives, their duties to the settlement class and the NASDAQ class conflict. The Court does not agree that a conflict exists as the class representatives have incentive to make the maximum recovery, and in deciding if a settlement was fair would have to take into account the·effect that the Bresea settlement would have on the NASDAQ litigation. Additionally, any challenge to the fairness that resulted from the class representatives actions can be addressed by class members at the fairness hearing.

Having reached the above conclusions, the Court finds that the settlement class meets the requirements for preliminary approval and that notice should therefore be issued to potential class members.

### C. Notice to Class Members

#### 1. Rule

■ Having found that issuance of notice is appropriate, the Court must now examine the actual notice. Purported members of a class must receive, "the best notice practicable under the circumstances." Fed. Rule

Civ. Proc. 23(c)(2). The notice must, "contain an adequate description of the proceedings written in objective, neutral terms that, insofar as possible, may be understood by the average absentee class member." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1103 (5th Cir.1977). The notice must "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *Id.* at 1105. Under the PSLRA, notice must conform to certain additional articulated standards. The notice must include a statement of Plaintiff recovery, "determined in an aggregate and on an average per share basis." 15 U.S.C. § 78u–4(a)(7)(A). The notice must provide a statement of potential outcome of the case. 15 U.S.C. § 78u–4(a)(7)(B). The notice must supply a statement of attorneys' fees or costs sought. 15 U.S.C. § 78u–4(a)(7)(C).

### 2. Analysis

Plaintiffs and Bresea claim they have submitted to the Court the best notice practicable. The Plaintiffs also state that the notice will inform class members whose claims arose after March 26, 1997 of the Court's order regarding them. The notice provided to the Court appears to meet the requirements of the PSLRA. Defendants presented no arguments opposing the notice in their responsive briefing, but at the settlement hearing, Defendants claimed that the notice was deficient on several grounds: the notice states that a 4 cent per share recovery is inaccurate; the cover page is actually two pages instead of one; the notice fails to disclose conflicts of U.S. Counsel; and the notice doesn't state what the United States class members will receive from the settlement.

Considering these objects in light of the notice submitted, the Court finds that the objections are without merit as the notice provided by Plaintiffs and Bresea is the best notice possible under the circumstances of the case. As stated earlier, this case is an incredibly complex securities fraud case with hundreds of class plaintiffs, many defendants, and even more attorneys. The briefing in the case has been monstrous, and the issues are hotly contested. Plaintiffs and Bresea have condensed the case to its essence and have memorialized that in the settlement notice. The fact that the cover sheet is actually two sheets is not remarkable. The Court found above that attorney conflict is not an issue in this settlement, and the other complaints by Defendants request that Plaintiffs and Bresea include items not required by the PSLRA or the Federal Rules. Defendants only seek to make an already complex notice more cumbersome. Having thoroughly reviewed the proposed notice, the Court finds that it is adequate and will provide potential class members with the information necessary to make an informed decision on whether to opt out of the class.

### III. CONCLUSION

Having concluded that the settlement class meets the Rule 23 requirements as a preliminary matter, having concluded that the settlement meets the preliminary fairness requirements, and having concluded that the notice is the best practicable under the circumstances, the Court hereby

**ORDERS** that Plaintiffs' and Bresea's Motion for Preliminary Approval of Settlement is **GRANTED**. The Court will issue a schedule regarding settlement notice and a fairness hearing by separate order.